# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**AHMET HEPSEN,**

    Plaintiff,

vs.                                            Case No. 8:07-CV-1935-T-EAJ

**J.C. CHRISTENSEN AND ASSOCIATES, INC., et al.,**

    Defendants.
_____/

## FINAL ORDER

This case is before the court following a July 23, 2009 bench trial and closing arguments on August 13, 2009. Having reviewed the evidence and applied the relevant legal authority, the court makes the following findings of fact and conclusions of law.

## Background

Plaintiff Ahmet Hepsen ("Hepsen") alleges that Defendant J. C. Christensen and Associates, Inc. ("Christensen") violated the Fair Debt Collection Practices Act ("FDCPA") by sending Plaintiff a letter that failed to identify the current creditor and misrepresented the correct amount of debt. Plaintiff also contends that Christensen violated the FDCPA by failing to provide him the name and address of the original creditor. Plaintiff seeks to recover $1,000 in statutory damages for each violation and $2,500 in actual damages as well as costs and attorneys fees.

## Findings of Fact

The following facts are established by a preponderance of credible evidence:

1.      During the relevant time period, Resurgent Capital Services, LP ("Resurgent") retained Christensen, a third-party collection agency, to recover unpaid debts.

2.      On or about October 26, 2006, Christensen received an account from Resurgent bearing the name and address of Plaintiff: Ahmet Hepsen, 275 Herons Run Drive, Apartment 707, Sarasota, Florida 34232. The referral balance on the account was $2,024.17 plus $655.01 in interest, for a total of $2,679.18. The account information from Resurgent noted that the debt was associated with a credit card account from Providian National Bank.

3.      In a letter to Plaintiff, dated October 27, 2006, Christensen made a demand for payment of $2,679.18 and identified the creditor as Resurgent. The demand letter advised Hepsen that LVNV Funding LLC ("LVNV") provided information regarding his account.

4.      The October 27, 2006 letter provided in pertinent part that:

>    Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you so notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

5.      By letter of November 16, 2006, Hepsen requested that Christensen provide validation of the debt. Specifically, Hepsen requested that Christensen provide any pertinent documents that verified his responsibility for the debt, an itemized breakdown of the charges, and supporting documents that verified the charges.

6.      Hepsen lived at the Sarasota address in 2006 and 2007. He never had an account with Resurgent and never had any past business dealings with Christensen. He did not intend to dispute

the amount of the debt when he wrote Christensen. However, Hepsen later stated that his letter did dispute the existence, the source, and the amount of the debt.

7. After Hepsen filed this action, Hepsen reviewed his personal credit report which listed a credit card account from Providian National Bank. Because the last four digits of the credit card account matched the four last digits of the account referenced in the demand letter, Hepsen assumed the debt was probably associated with the credit card account. Hepsen believed he had a credit card with Providian National Bank in 2004 but has no memory of using the credit card. When he lived in Sarasota, Hepsen did not use personal credit cards for business expenses because he had a company credit card.

8. Upon receipt of Hepsen's letter on November 21, 2006, Christensen documented the account with a "disputed" status code. On November 30, 2006, Christensen forwarded Hepsen's letter to Resurgent for validation of the debt and ceased all collection activity.

9. On December 8, 2006, Christensen closed Hepsen's account and returned the account to Resurgent. Christensen did not respond to Hepsen's dispute letter.

10. By letter dated December 21, 2006, Resurgent demanded that Hepsen pay a current balance of $1,955.30 owed to the creditor LVNV. The letter enclosed "an original validation of debt that verifies the debt." The validation of the debt provided that "At the time the account was acquired from OSI/Gulf State Credit, OSI/Gulf State Credit advised that the balance owing was $1,369.16. Since that time, additional interest, fees, payments, credits and offsets, if applicable, have been allowed, for a current balance of $1,955.30." The validation also stated that OSI/Gulf State Credit, the previous creditor, was acquired by LVNV.

11.  According to Delilah Stellmach, the compliance director of Christensen, Resurgent electronically transferred Hepsen's account information to Christensen, including his name, address, social security number, account number, debt amount, interest amount, a balance file, payment file, and an interest adjustment file.

12.  According to Christensen's policy, the creditor identified in a demand letter is the party who has a contract with Christensen. Based on the information received from Resurgent on October 26, 2006, Christensen listed Resurgent as creditor on Hepsen's account and the amount of the debt as $2,679.18.

13.  From October 26, 2006 to November 28, 2008, Resurgent notified Christensen of five interest adjustments to Hepsen's account. Because the adjustments were correctly processed and the account balanced, Christensen did not contact Resurgent to inquire about the accuracy of the debt amount. Resurgent calculated the interest rate on Hepsen's debt and electronically transmitted this information to Christensen. Because of the numerous interest adjustments made to Hepsen's account, Stellmach admitted that it would have been a good idea to check with Resurgent regarding the correct balance amount. Christensen was not able to validate the debt.

14.  Christensen was never informed by Resurgent that the balance amount on Hepsen's account was incorrect. Christensen's contract with Resurgent did not require Resurgent to certify that the account information is accurate.

15.  Christensen has a two week training program for new employees. In addition, Christensen subjects employees to compliance testing before engaging in collection work, provides written materials to employees that comply with the FDCPA requirements, and maintains an electronic

record of collection activity. Christensen's initial collection letters are approved by an attorney with the American Collection Association.

16. When Christensen receives a dispute letter, Christensen removes the consumer's telephone numbers from the account file to stop collection calls. Christensen also makes an entry in the electronic file regarding the dispute letter and forwards the dispute letter to the client for verification. Until Christensen receives verification from a client, the account stays inactive. If the client does not provide verification of the debt, Christensen closes the file and returns to the account to the client.

17. John Paul Torres ("Torres"), a legal analyst with Resurgent, testified that LNVN purchases portfolios of delinquent accounts and contracts with Resurgent to recover unpaid debts. Resurgent obtains the debt information from the company that sold the account. In reference to Hepsen's account, Resurgent received debt information from OSI/Gulf State Credit. Torres noted that OSI/Gulf State Credit would have known that the original creditor was Providian National Bank. Torres does not believe that Resurgent sent Christensen the incorrect debt amount on Hepsen's account. Furthermore, Torres stated that Resurgent's contract with Christensen does not require Resurgent to certify to the accuracy of the debt amount.

18. When collecting a debt, Torres stated Resurgent can demand less than the full amount of the debt. Torres testified that Resurgent demanded $1,955.30 from Hepsen in December 2006 because it decided to decrease the amount of interest on the debt.

## Conclusions of Law

### I. Plaintiff's Debt was a Consumer Debt

Although Christensen does not deny that Plaintiff is a "consumer" under the FDCPA, it argues that Plaintiff has not established that the debt owed was a consumer debt. Christensen asserts that Plaintiff cannot remember details regarding the debt and therefore cannot show that the debt arose primarily for personal, family, or household purposes. As such, Christensen contends that it cannot be held liable for any alleged violations of the FDCPA.

The FDCPA defines a debt as any obligation or alleged obligation of a consumer to pay money arising out of a transaction which is primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). Consequently, the FDCPA applies to consumer debts and not business loans. In determining whether a debt is a consumer debt, it is necessary to look at the transaction as a whole, paying particular attention to the borrower's purpose in obtaining the credit. Slenk v. Transworld Sys., 236 F.3d 1072, 1075 (9th Cir. 2001). The determination of whether a debt is incurred for primarily personal, family, or household purposes is a fact driven one and should be decided on a case-by-case basis looking at all the relevant factors. Hansen v. Ticket Track, Inc., 280 F. Supp. 2d 1196, 1204 (W. D. Wash. 2003). An important factor in deciding whether a debt was incurred for primarily for personal, family, or household purposes is whether the debt was incurred in a personal capacity. Id.

After Hepsen reviewed his personal credit report, he believed the credit card account from Providian National Bank was associated with the debt referenced in Christensen's demand letter. Although Hepsen did not specifically recall what he used the account for, he did not use personal credit cards for business expenses because he had a company issued credit card. Defendant's failure

6

to rebut this evidence supports a finding that a consumer debt existed. See McCorriston v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1274 (M.D. Fla. 2008). Additionally, the debt was incurred in Hepsen's personal capacity and the account information listed his home address in Sarasota. Based on this evidence, the court finds that the debt was incurred primarily for personal, family, or household purposes, and therefore, is a consumer debt under the FDCPA.

## II.     Defendant's Alleged Violations of the FDCPA

Plaintiff argues that by misstating the name of the creditor and the amount of the debt in the demand letter, Christensen falsely represented the character and legal status of the alleged debt in violation of § 1692e(2)(A) and § 1692e(10). Plaintiff also alleges that by incorrectly naming the creditor and misstating the amount of the debt, Christensen failed to show the amount claimed was expressly authorized by contract as required by § 1692f(1). Christensen denies any errors in its initial communication to Hepsen. Christensen argues it properly relied on information provided by its client and was not required to conduct an independent evaluation of the underlying debt and asserts it did not violate the statute by naming Resurgent as the creditor in its demand letter because a debt collector has no liability for failing to name an original creditor in the initial communication. Christensen further contends that Hepsen did not challenge the amount of the debt in his dispute letter and he proffered no documentary evidence that the amount of the debt was inaccurate.

One purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). The FDCPA has been construed as a strict liability statute. See Ferguson v. Credit Mgmt. Control, Inc., 140 F. Supp. 2d 1293, 1297 (M.D. Fla. 2001). In deciding whether the FDCPA has been violated, the appropriate standard is whether the "least sophisticated consumer" would have been deceived or misled by the conduct at issue. Jeter v. Credit Bureau, Inc.,

7

760 F.2d 1168, 1175 (11th Cir. 1985). The statute does not require an independent investigation of the debt referred for collection. Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1032 (6th Cir. 1992). If a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1177 (9th Cir. 2006).

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2)(A) of the FDCPA makes it a violation for a debt collector to falsely represent "the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2)(A). The statute also prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e(10). Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

A. Amount of Debt

Regarding whether Hepsen challenged the amount of the debt in his dispute letter, the evidence is conflicting. At trial, Hepsen initially testified that it was not his intent to dispute the amount of the debt. Later, Hepsen stated that by sending his letter to Christensen, he was disputing the existence, the source, and the amount of the debt. Nonetheless, by asking for a breakdown of the charges, one can infer that Hepsen was challenging the amount of the debt.

A dunning letter must state the exact and correct amount of the debt in order to comply with § 1692g(a)(1). See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d

872, 875 (7th Cir. 2000) (dunning letter listing only a portion of the debt did not comply with the FDCPA). When a debt collector demands an incorrect amount of money in a dunning letter, it makes a false and misleading representation in violation of § 1692e(2)(A). Maxwell v. Fairbanks Capital Corp., 281 B.R. 101, 119 (Bankr. D. Mass. 2002).

Plaintiff has shown by a preponderance of the evidence that Christensen incorrectly stated the amount of the debt as $2,679.18 in its demand letter. At the time Resurgent acquired the account from OSI/Gulf State Credit, Resurgent received information that the balance owing on Hepsen's account was $1,369.16. With additional interest and fees, the current balance increased to $1,955.30. Christensen's argument that the amount of $1,955.30 reflects Resurgent's settlement amount is unpersuasive. Although Resurgent could have sought less than the full amount in collecting a debt, Resurgent's validation letter does not suggest that the balance of $1,955.30 was offered as a settlement for less than the full amount of the debt. Thus, Christensen violated § 1692e(2)(A) when it misrepresented the amount of debt.

B. Name of Current Creditor

A clearly false representation of the creditor's name may constitute a "false representation . . . to collect or attempt to collect any debt or to obtain information concerning a consumer" under section 1692e(10).[1] Blarek v. Encore Receivable Mgmt., Inc., No. 06-C-0420, 2007 WL 984096, at *15 (E.D. Wis. Mar. 27, 2007). Imposing liability based on a statement incorrectly identifying the name of a creditor comports with the purposes of the FDCPA. Id.

---

[1] In determining whether a debt collector has made a false representation in the context of misstating a creditor's name, some courts analyze the general language of § 1692e, without specifying whether § 1692e(2)(A) or § 1692e(10) applies. See e.g. Luzinski v. Arrow Fin. Servs., LLC, No. 05-CV-1322, 2007 WL 2819556, at * 9-10 (E.D. Wis. Sept. 26, 2007); Bode v. Encore Receivable Mgmt., Inc., No. 05-CV-1013, 2007 WL 2493898, at * 7 (E.D. Wis. Aug. 30, 2007).

9

It is undisputed that Christensen identified Resurgent as the creditor in its dunning letter to Hepsen when, in fact, at the time of the October 27, 2006 letter to Hepsen, the current creditor was LVNV. This was a false representation. A creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed," but such term does not include debt collectors. 15 U.S.C. § 1692a(4). By using the name of its client in the demand letter, rather than LVNV as the creditor on Hepsen's account, Christensen violated § 1692e(10).

Section 1692g(a)(5), which requires a debt collector to provide the name and address of the original creditor in response to a written request for such information does not excuse Christensen's misidentification of the current creditor in its initial communication. Accordingly, Christensen misidentified the current creditor in its demand letter to Hepsen.

C. Identification of Original Creditor

The FDCPA requires validation of a disputed debt by debt collectors. 15 U.S.C. § 1692g. If a consumer requests the identity of the original creditor within the thirty-day period, "the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692g(a)(5).

There is no merit to Plaintiff's argument that Christensen was required to inform him of the name and address of the original creditor in response to Plaintiff's letter. Upon receipt of Hepsen's dispute letter, Christensen forwarded Hepsen's dispute letter to Resurgent for verification and ceased all collection activity. When Resurgent did not provide Christensen with a validation of the debt, Christensen closed the account and returned the files to Resurgent. Indeed, Stellmach testified that Christensen was unable to verify the debt.

If a debtor disputes the debt amount, § 1692g(b) requires a debt collector to cease collection actions until the debt collector verifies the accuracy of the amount claimed. 15 U.S.C. § 1692g(b). Where a debt collector ends collection activities pursuant to § 1692g(b), the debt collector is not obligated to send a separate validation of the debt to the debtor. Smith, 953 F.2d at 1031-32. Where a debt collector cannot verify the debt and ceases collection efforts, a demand letter promising a debt verification will not be deemed misleading or deceptive. Jang v. A.M. Miller and Assocs., 122 F.3d 480, 483-84 (7th Cir. 1997). Thus, because Christensen could not verify the debt and ceased all collection actions, it did not violate the FDCPA by failing to provide Hepsen with the name and address of the original creditor.

### III. Bona Fide Error Defense

Although Christensen erroneously identified the current creditor and misstated the amount of the debt in its demand letter, the court must determine whether Christensen has proved its "bona fide" error defense. Christensen contends it is entitled to the bona fide error defense because it reasonably relied upon the information received from Resurgent. According to Defendant, any "technical errors" occurred notwithstanding the maintenance of procedures reasonably adapted to avoid such errors.

Pursuant to § 1692k(c), a debt collector "may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). If a debt collector reasonably relies upon a debt reported by the creditor, the debt collector will not be liable for any errors. Clark,

460 F.3d at 1177. However, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable. Id.

To avail itself of the defense, a debt collector must maintain "reasonable preventive procedures" aimed at avoiding the errors. Reichert v. Nat'l Credit Sys, Inc., 531 F.3d 1002, 1006 (9th Cir. 2008) (citation omitted). Reasonable preventive procedures by debt collectors include: publication of an in-house fair debt collection compliance manual, training seminars on compliance issues, detailed pre-litigation review process, and creditor's verification under oath regarding the accuracy of each charge. Jenkins v. Heintz, 124 F.3d 824, 834-35 (7th Cir. 1997). In addition to determining whether the debt collector maintained and employed procedures to avoid errors, the procedures must be reasonably adapted to avoid the specific error at issue. Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006). Furthermore, a debt collector's mere assertion that the procedures are reasonably adapted to avoid errors is not sufficient to satisfy the "procedures" requirement of the bona fide error defense. Reichert, 531 F.3d at 1007. A debt collector must explain the procedures and the manner in which they were adapted to avoid error. Id.

Here, Christensen's policies and procedures were not reasonably adapted to avoid the errors at issue. First, Christensen's policy regarding the identification of creditors in demand letters is insufficient to satisfy the bona fide error requirement. Christensen elects to name its client as the creditor in demand letters. It follows this practice even when a client is a debt collector under the FDCPA. Despite receiving information from Resurgent that Hepsen's account was related to a credit card issued by Providian National Bank and that LVNV provided information regarding Hepsen's account, Christensen followed its practice of naming its client, Resurgent, as the creditor.

Second, Christensen has not shown that it maintained adequate safeguards designed to

12

prevent the misstatement of the debt amount. It does not require its clients to certify that the account information is true and accurate. Furthermore, Christensen's account balancing system merely verifies that any adjustments received from a client are posted correctly. In light of the numerous interest adjustments to Hepsen's account, Stellmach surmised it might have been prudent to confirm the accuracy of the debt amount with Resurgent. Nonetheless, Christensen's policy did not require such confirmation. Thus, Christensen has not established that it maintained procedures reasonably adapted to avoid misstating the amount of debt in its demand letter to Plaintiff.

Christensen correctly notes that it was under no obligation to conduct an independent investigation of the debt collection information provided by Resurgent. Smith, 953 F.2d at 1032. However, the fact that Resurgent never informed Christensen of an inaccurate balance amount on Hepsen's account does not establish that its reliance on Resurgent's account information is reasonable. Indeed, Christensen's reliance on debt information from Resurgent may not "act as substitute for the maintenance of adequate procedures to avoid future mistakes." Reichert, 531 F.3d at 1007. Accordingly, Defendant has not met its burden of establishing the bona fide error defense.

**IV.    Amount of Damages**

Pursuant to section 1692k(a), Plaintiff is entitled to recover actual damages plus statutory damages not to exceed $1,000 for each violation. 15 U.S.C. § 1692k(a). In determining the amount of statutory damages, the court shall consider the frequency and persistence of the noncompliance by the debt collector as well as the nature and extent of the noncompliance. 15 U.S.C. § 1692k(b)(1). Although Plaintiff alleges that Christensen's demand letter caused him inconvenience and worry, Plaintiff submitted no proof of actual damages. In reference to Plaintiff's request for statutory damages, the court finds that Christensen misidentified the name of the creditor and misrepresented

13

the amount of the debt in one demand letter. After Christensen received Hepsen's dispute letter, it ceased all collection activities. Considering the relevant facts, the court awards Plaintiff $250 for each violation, for a total award of $500.

## Conclusion

Defendant violated the FDCPA by failing to identify the current creditor and misstating the amount of debt in a demand letter to Plaintiff. Because Defendant's policies and procedures were not reasonably adapted to avoid the errors at issue, the bona fide error defense does not apply. Plaintiff is entitled to an award of statutory damages totaling $500.

Accordingly, and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) Pursuant to the FDCPA, Plaintiff is awarded $500 in statutory damages. The Clerk shall enter judgment in this amount for Plaintiff and against Defendant;

(2) The court retains jurisdiction over any timely motion for attorneys' fees and costs recoverable in this matter.

**DONE AND ORDERED** in Tampa, Florida on this 22nd day of September, 2009.

ELIZABETH A JENKINS
United States Magistrate Judge