IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

AHMET HEPSEN,

       Plaintiff,

vs.                    CASE NO.: 8:07-cv-1935-T-EAJ

J.C. CHRISTENSEN AND
ASSOCIATES,INC.,

       Defendant.
_____/

<u>MOTION FOR AWARD OF ATTORNEY FEES AND COSTS BY PLAINTIFF</u>

Plaintiff Ahmet Hepsen ("Hepsen") hereby moves the Court for an award of attorney fees pursuant to the provisions of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §1692k(a)(3), against defendant J.C. Christensen and Associates, Inc. ("J.C. Christensen"), and in support thereof states as follows:

1. Plaintiff Hepsen is represented in the above-styled matter by the law firm of Vollrath-Condon, P.A., and time and billing records show that time has been put into the case by attorneys Timothy Condon, Frederick W. Vollrath, and Paul H. Hagglund, as well as paralegal Kimberley Buccini.

2. On September 23, 2009 judgment was entered in favor of the plaintiff in the above action for $500.00.

3. The action brought by the plaintiff was successful within the meaning of 15 U.S.C. §1692k(a)(3) of the FDCPA, which provides for award of attorneys' fees upon the

successful assertion of an action under the Act.

4. The plaintiff and Vollrath-Condon, P.A. have agreed that counsel will accept whatever fees are awarded by this Court in lieu of direct payment by the client; as such, the agreement constitutes a contingent fee contract.

5. An affidavit of experience and detailed time records of attorneys (and paralegal support, if any) is attached as Exhibit "A," and the time and costs expended as reflected thereon are reasonable.

6. The attorneys of Vollrath-Condon, P.A. have a normal fee rate of $350.00 per hour for litigation such as that in this action; that hourly rate is in line with prevailing market rates for such litigation in the Tampa Bay area by attorneys with similar skills, experience, reputations and abilities as Timothy Condon, Frederick W. Vollrath, and Paul H. Hagglund, as shown by the affidavit attached as Exhibit "B". That rate has been awarded in the past to Vollrath-Condon, P.A. attorneys in the Middle District of Florida for litigation similar to that in the instant action. See, e.g., Beishir v. Chase Home Finance, Case No. 8:07-CV-65-T-27MAP (M.D. Fla., February, 26, 2008).

7. For the reasons shown below, an award of fees should be enhanced by a multiplier based upon the factors elicited in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

WHEREFORE, plaintiff Ahmet Hepsen moves for award of attorney fees and costs as reflected herein below.

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES

### I. SUMMARY OF ARGUMENT

**A. PLAINTIFF'S ACTION WAS SUCCESSFUL.**

**B. A PRELIMINARY ATTORNEYS' FEE AMOUNT SHOULD BE FIGURED ACCORDING TO THE LODESTAR FORMULA.**

**C. THE LODESTAR AMOUNT SHOULD NOT BE REDUCED DUE TO NATURE OF REPRESENTATION OR THE AMOUNT OF THE JUDGMENT AWARDED.**

**D. THE FEES AWARDED SHOULD BE ENHANCED BY A MULTIPLIER.**

**E. PLAINTIFF IS ENTITLED TO AWARD OF FEES FOR TIME EXPENDED IN PREPARING THIS MOTION.**

### II. ARGUMENT

**A. PLAINTIFF'S ACTION WAS SUCCESSFUL.**

The plaintiff prevailed in this action: Judgment was entered against defendant J.C. Christensen and Associates, Inc. for $500.00 and for the award of reasonable attorney's fees and costs on September 23, 2009.

The award of attorneys fees to counsel for successful plaintiffs in FDCPA actions is mandatory, and results from the stated Congressional intent to end abusive debt collection practices. Johnson v. Eaton, 958 F.Supp. 261, 264 (M.D. La. 1997). In litigation pursuant to the Fair Debt Collection Practices Act, the Second Circuit has stated, "Because the FDCPA was violated...the statute requires the award of costs and reasonable attorney's fee...." Pipiles v. Credit Bureau of

Lockport, Inc., 886 F.2d 22, 28 (2d Cir. 1989), citing Emanuel
v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir.
1989).

Attorneys' fees awards should not be construed as a
special or discretionary remedy; rather, the Act mandates
award of attorney's fees as a means of fulfilling Congress's
intent that the Act should be enforced by debtors acting as
private attorneys general. Graziano v. Harrison, 950 F.2d 107,
113 (3d Cir. 1991). See also DeJesus v. Banco Popular de
Puerto Rico, 918 F.2d 232, 235 (1st Cir. 1990).

**B. A PRELIMINARY ATTORNEYS' FEE AMOUNT SHOULD BE
FIGURED ACCORDING TO THE LODESTAR FORMULA.**

The U.S. Supreme Court has explained the calculation for
an award of attorney fees as follows:

> **The most useful starting point for
> determining the amount of a reasonable fee
> is the number of hours reasonably expended
> on the litigation multiplied by a reasonable
> hourly rate.  The calculation provides an
> objective basis on which to make an initial
> estimate of the value of a lawyer's
> services.**

 Hensley v. Eckerhart, 461 U.S. 424, 433; 103 S.Ct. 1933, 1939;
76 L.Ed. 2d 40 (1983).

Although this decision, and some others cited herein
after, arise in the context of the Civil Rights/Attorney's
Fees Award Act, 42 U.S.C. 1988, the criteria cited are equally
applicable here. "The standards set forth in this opinion are

generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party." Id. at 1939, n7. "We have stated in the past that fee-shifting statutes' similar language is a strong indication that they are to be interpreted alike." Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754 (1989) (quoting Northcross v. Memphis Board of Education, 412 U.S. 427, 428 (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." Student Public Interest Research Group v. AT&T Bell Laboratories, 842 F.2d 1436, 1441 (3d Cir. 1988).

Attorneys (and paralegal personnel, if applicable) have expended time in this litigation as reflected in the Unsworn Declaration attached as Exhibit "A". Those amounts of time were reasonable and necessary to reach the successful results in this litigation. In addition, the hourly rate of $350.00 is reasonable. Gradisher v. Check Enforcement Unit, Inc., 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (in 2002 attorney fee rates of $300 to $400 per hour were reasonable for a lawyer with a great deal of experience in bringing FDCPA cases); Beishir v. Chase Home Finance LLC, Case No. 07-CV-65 (M.D. Fla. February 26, 2008) (where Mr. Condon was awarded fees at the rate of $350 per hour).

Thus, the lodestar calculation for the award of fees in this matter, as shown by Exhibit "A," totals $53,618.50.

However, that amount should be reduced by fees previously paid or recovered in this action in the amount of $4,000.00. Accordingly, the lodestar amount should be reduced by the above amount, for a revised total of 49,618.50 (the "revised lodestar amount").

### C. THE LODESTAR MAY NOT BE REDUCED DUE TO NATURE OF REPRESENTATION OR THE AMOUNT OF THE JUDGMENT AWARDED.

The plaintiff seeks an award of attorney fees based upon the revised lodestar formula and a multiplier. The opposing side may, however, suggest that a lesser amount is appropriate. In anticipation of such arguments, Counsel for the plaintiff would state as follows:

A. Previously established rates are appropriate for plaintiff's counsel: "In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases....Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." Tolentino v. Friedman, 46 F.3d 645 (7th Cir. 1995).

B. The Award of Attorney Fees Is Not Limited by the Amount of Damages: As long as the plaintiff is successful---that is, as long as more than nominal damages are recovered---

the plaintiff should under no circumstances be awarded less than the lodestar amount of attorney fees. "In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." City of Riverside v. Rivera, 477 U.S. 561, 581 (1986) (footnote omitted). See also Johnson v. Eaton, 80 F.3d 148 (5th Cir. 1996); Carroll v. Wolpoff & Abramson, 961 F.2d 459 (4th Cir. 1992), cert. denied, 505 U.S. 905 (1992).

The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions protecting consumer rights are more important than often relatively small damage awards indicate. Indeed, when a provision for counsel fees is included in a regulatory act, it constitutes recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney fees.  The Court in City of Riverside, 477 U.S. at 575, quoted Senator Tunney's remarks in the Congressional Record as follows: "If the citizen does not have the resources, his day in court is denied him; the Congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." City of Riverside v. Rivera, 477 U.S. 561, 575 (1986) (citation omitted).

Thus, the amount of damages awarded should bear no

relationship to the amount of attorney fees granted. "[A]ttorney's fees awarded by district courts have 'frequently outrun the economic benefits ultimately obtained by successful litigants'." Evans v. Jeff D., 475 U.S. 717, 735 (1986). For instance, in the case of Gray v. Florida First Financial Group, Inc., 359 F.Supp.2d 1316 (M.D. Fla. 2005), the Court awarded $1,500.00 to the plaintiff and $24,045.00 in fees to counsel for the plaintiff. In Johnson v. Eaton, 958 F.Supp. 261, 264 (M.D. La., 1997), the court award fees greatly in excess of the damages awarded, and observed as follows:

> **No doubt defendant Eaton will bemoan the size of the attorney's fee awarded by this ruling, arguing that it is grossly out of proportion to the amount of damages the jury awarded to the plaintiff. Indeed, the attorney's fee award is nearly 27 times greater than the damage award. But this case was not just about money. The FDCPA prohibits a certain conduct by debt collectors, including attorneys; it discourages such conduct by permitting awards of actual damages, additional (or statutory) damages, and attorney's fees. Congress apparently concluded not only that limiting a plaintiff to recovery of only actual damages would not provide a sufficient incentive for plaintiffs to bring even well-founded claims against debt collectors under the FDCPA, and thus would not accomplish the purpose of the statute, but also that an award of up to $1,000.00 as additional damages may still not provide sufficient incentive to plaintiffs to bring claims under the FDCPA. As demonstrated by this case, the cost of fully litigating an FDCPA case can be substantial. Without the prospect of an award of attorney's fees as**

> **an additional incentive, it is unlikely that persons of ordinary means would choose to bring FDCPA cases.**

Thus, the amount of damages awarded should bear no relationship to the amount of attorney fees granted in an action such as this.

### D. FEES AWARDED SHOULD BE ENHANCED BY A MULTIPLIER

The revised lodestar amount should be enhanced by a multiplier for the following reasons pursuant to the ruling in <u>Johnson</u>, 488 F.2d at 717-19:

**i. THE SKILL REQUISITE TO PERFORM THE LEGAL SERVICE PROPERLY:** Relatively few attorneys bring consumer protection actions under the FDCPA. Thus, the level of skill and knowledge required to bring and successfully prosecute such actions is beyond (or different than) what most attorneys possess, since they do not practice in this area. In the instant case there were originally three corporate defendants; multiple issues were presented to the Court and ruled upon; countervailing motions for summary judgment were filed and memorandums in opposition thereto prepared and filed which the Court ruled upon; two court-ordered mediations were attended; and the case was ultimately tried before the Court. J.C. Christensen mounted a vigorous and spirited defense in this action, as is its right in the 11th Circuit. However, [o]nce it does so it cannot then complain that the fees award should

be less than claimed because the case could have been tried with less resources and with fewer hours expended." Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1575 (11th Cir. 1985).

In addition, adding to the difficulty and apparent complexity of the issues presented, defendant J.C. Christensen made demand early-on for dismissal of the claim against it, making a threat to file an Rule 11 motion for sanctions if the plaintiff did not accede (a copy of the threatened Rule 11 motion and correspondence accompanying it, as well as the plaintiff's response thereto, is attached as Exhibit "C" for the Court's information).[1]

**ii. WHETHER THE FEE IS FIXED OR CONTINGENT:** In the instant case the fee agreement is contingent; while not dispositive of the question of whether or not to utilize a multiplier factor, Blanchard v. Bergeron, 489 U.S. 87 (1989), the fact that taking a consumer protection case on such an agreement runs the risk of recovering no fees at all should be taken into consideration by the Court.

**iii. THE AMOUNT INVOLVED AND THE RESULTS OBTAINED:** The rights of the plaintiff were vindicated in this action: The Court awarded statutory damages under the FDCPA and FCCPA;

---

[1] Counsel for the plaintiff hasten to add that this is not intended to criticize opposing counsel, who is an expert, principled, and vigorous advocate on behalf of his clients, and with whom counsel for the plaintiff have litigated many times in the past and doubtless will in the future. Rather, the threat and correspondence are offered with respect to illustrating both the difficulty and the undesirability of the case.

thus the results obtained were good. Although the amount involved in damages awarded to the consumer in this action is relatively small, "Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies," Student Public Interest Research Group of New Jersey, Inc. v. AT&T Bell Laboratories, 842 F.2d 1436 (3rd Cir. 1988), and did not limit the amount of fees that can be awarded under the Act. Indeed, it has been ruled in this Court that "The [FDCPA] provides no numerical limit on the amount appropriate for the actual damages or for the reasonable attorneys' costs." Beeders v. Gulf Coast Collection Bureau, Inc., Case 8:09-cv-00458-EAK-EAJ (M.D. Fla. June 30, 2009).

Accordingly, the relatively small damages awarded to the plaintiff does not limit the amount of fees that may be awarded by this Court.

**iv. THE EXPERIENCE, REPUTATION, AND ABILITY OF THE ATTORNEYS:** The attorneys with Vollrath-Condon, P.A. who worked on this case have a normal fee rate of $350.00 per hour for litigation such as that in this action; that hourly rate is in line with prevailing market rates for such litigation in the Tampa Bay area by attorneys with similar skills, experience, reputations and abilities as Frederick W. Vollrath, Esq.; Timothy Condon, Esq.; and Paul H. Hagglund, Esq., each of whom has over 25 years of litigation experience in the Tampa Bay

area and elsewhere; their reputations as lawyers in their
areas of expertise are good (Mr. Vollrath in the areas of
criminal law and consumer protection law; Mr. Condon in the
areas of commercial litigation and collections law; Mr.
Hagglund in the areas of real estate transactions, foreclosure
litigation, and bankruptcy). Their abilities are further
demonstrated by multiple wins in recent years (and also losses
where they have unsuccessfully sought to expand the reach and
effectiveness of both federal and state consumer protection
laws), including favorable settlements for aggrieved
plaintiffs in lawsuits vindicating consumer rights under the
FDCPA.

**v. THE "UNDESIRABILITY" OF THE CASE:** Many lawyers
practice and specialize in the areas of personal injury,
criminal law, estates and trusts, domestic relations, real
estate, corporate law, etc. But there is a comparative dearth
of lawyers actively pursuing consumer protection law in the
state of Florida. Part of the reason may be that consumer
protection actions sometimes involve bringing debt collecting
lawyers and law firms to heel under the FDCPA. See, e.g.,
Heintz v. Jenkins, 514 U.S. 291 (1995). Another reason is
doubtless that clients tend to be penurious, and because no
chance exists for recovering "windfall" fees. The consumer
protection lawyer labors in an area of law that garners
neither general respect nor riches, despite the clear intent

of Congress in passing the FDCPA to encourage attorneys to take such cases.

In addition, in the instant case the demand for dismissal and threat to file a motion for Rule 11 sanctions by J.C. Christensen, as shown by Exhibit "C," made this action even more undesirable than normal. Where a defendant believes its case to be powerful and compelling enough that it feels comfortable in making such a demand and threat, the undesirability of the plaintiff's case is thereby increased, if for no other reason than the increased time and stress to the plaintiff in dealing with such a threat

**vi. THE NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENT:** Consumer protection actions, designed to vindicate Congressional policy and rights of consumers, do not generally result in long-term professional relationships with clients; accordingly, the fees awarded should be higher than would normally be the case.

An award of fees with an enhancing multiplier has been awarded by this Court in the past in litigation brought under the FDCPA. See Reynolds v. Chand, Case No. 8:05-civ-1966-T-17-TGW (M.D. Fla. September 27, 2006), where a multiplier factor of .5 was applied to a lodestar amount on a default judgment entered against a debt collector subject to the FDCPA.

There is another reason why fees awarded in this action should be enhanced by a multiplier, and it is perhaps the most

important. Since the Fair Debt Collection Practices Act was
passed by Congress in 1977 the debt collection industry has
been radically transformed, as explained by the excerpt that
follows from the online encyclopedia, Wikipedia:

> **The debt buying industry in the United
> States began as a result of the Savings &
> Loan scandals of the 1980's. During this
> time banks were closing at an alarming rate
> and the FDIC or Federal Deposit Insurance
> Corporation received the assets of the bank
> to cover the expenses associated with
> repaying the closed depositors. When the
> FDIC (and eventually the Resolution Trade
> Corporation or RTC)took control of the
> assets they had to find institutions,
> organizations and private investors that
> would be willing to purchase the assets of
> closed banks including both performing and
> non-performing (delinquent or charged-off)
> accounts. The RTC held auctions around the
> country allowing organizations to bid for
> portfolios of mixed assets. At these
> auctions the bidders were not able to
> evaluate the assets prior to bidding and
> most purchasers had no idea what they had
> purchased until they had left the auction.
> The availability of these assets to the
> general public was the fuel used to launch
> the debt buying industry**
>
> **Due to the historic profitability of the
> business, the debt buying industry of the
> business, the debt buying industry has
> seen dramatic expansion in recent years. Debt
> buyers purchased approximately $110 billion
> in face value of delinquent debts in 2005,
> which is about double the amount bought in
> 2000...Debt buyers range in size from very
> small private businesses to multi-million
> dollar publicly traded companies - there are
> currently four publicly traded debt buyers.
> NOC, previously the largest debt collector**

> **was taken private in 2006 after merging with
> One Equity Partners. As the visibility and
> profitability of the industry has grown, so
> too, has the competition, both in terms of
> the number of debt buyers and the rising
> prices of bad debt. Additionally, there is
> a secondary market in this debt, with the
> debt buyers reselling the assets to another
> debt buyer. The next buyers of the asset
> will likely attempt to collect the debt for
> a pre-determined period of time and then re-
> sell that asset to yet another debt buyer.
> This cycle may continue until the debt has
> reached as many as 7 different debt buyers.**

See http://en.wikipedia.org/wiki/Debt_buyer (accessed May 20,
2009).

In the meantime, the number of lawyers who have devoted
themselves to consumer protection litigation under the FDCPA
and parallel state statutes has languished. Consumer
protection law is not even listed as a separate "area of
practice" by Martindale-Hubbell, being subsumed into the
general category of "Debtor Creditor law" which includes
bankruptcy lawyers and various types of creditors' attorneys:
"Debtor Creditor includes Creditors Rights, Creditors Rights
in Bankruptcy, Collections, Debtor and Creditor Remedies,
Debtor and Creditor Workouts, Debtor Rights, Fair Debt
Collection Practices Act, International Creditors Rights,
Secured Creditors Rights, Unsecured Creditors Rights." (See
http://www.martindale.com/Debtor-Creditor-law-firms-
countries.htm. Accessed May 20, 2009.)

In addition, the Congressional plan to have private

parties bring actions to enforce the Act has created a huge
disproportion of power. As noted above, bad debt buyers
include  multi-million dollar commercial entities, some of
which are publicly traded. Such debt buyers, as well as
secondary-market companies and other entities have the
resources to purchase insurance against their violations of
consumer protection acts. The end result is that private
litigants supposedly acting as "private attorneys general"
usually litigate against either large companies or insurance
defense counsel. Further, due to the nature of the financial
condition of the overwhelming majority of their clients,
consumer protection lawyers must handle consumer protection
cases mainly on an unpaid contingent fee basis. The reward for
winning an action is a "reasonable fee," unlike other
contingent fee practices such as personal injury, where the
fees paid are large, and not infrequently in the millions of
dollars. The cost of losing an action in both instances is
being awarded neither fees nor costs. The difference is that a
"reasonable fee" for conducting Congressionally mandated
public interest litigation results in neither a monetary
cushion nor easily available funds to bring future public
interest cases on behalf of often penniless plaintiffs.

Today, with the rise of bad debt portfolio purchasing
entities, and with Americans more mired in debt than in the

past,[2] the problem of debt collection abuse and harassment is worse than ever. Reflecting that reality, in 2006 the Boston Globe ran a four-part series entitled "Debtors' Hell." Those sections included "Preying on Red-Ink America (No mercy for consumers)"; "Behind the Badge (Enforcers' might goes unchecked)"; and "National Crisis, Official Silence (Regulators, policy makers seldom intervene)." The series did not mention the FDCPA, but did illustrate the use of tactics that violate the Act and other consumer protection laws.

Further demonstrating and illustrating the increasing weakness of the FDCPA as a bulwark against rogue debt collectors, the FTC recently issued a report on February 26, 2009 with the headline "FTC Urges Reform and Modernization of Federal Debt Collection Law." The FTC workshop report is entitled "Collection Consumer Debts - The Challenges of Change." See http://www.ftc.gov/opa/2009/02/fdcpa.shtm (accessed May 20, 2009). In that report the FTC noted, among other current problems with the FDCPA, the following:

> **Congress has not changed the statutory damages amounts for individual and class actions in thirty years. Many consumer advocates expressed the opinion that such damage awards should be increased enough to keep pace with the inflation to deter debt collectors from violating the statute. NCLC and NACA report that, with inflation, $1,000**

---

[2]See, e.g., The New York Times, "The Debt Trap: Given a Shovel, Americans Dig Deeper Into Debt," by Gretchen Morgenson (July 20, 2008); http://www.nytimes.com/2008/07/20/business/20debt.html (accessed May 21, 2009).

in 1977 dollars equals approximately $360.00
in 2008 dollars and $5000.00 equals approximately $1,800,000 in
2008 dollars. Commenters also recommended that in the future
these damage amounts should be adjusted periodically to keep
pace with the price increases.

> The Commission believes it is important for
> the FDCPA to be primarily a self-enforcing
> statute as Congress intended. Because the
> Commission receives more than 70,000 third-
> party debt collection complaints per year,
> it is not feasible for federal government
> law enforcement to be the exclusive or
> primary means of deterring all possible law
> violations. Private actions therefore are
> critical in deterring those who would
> violate the FDCPA. For private actions to be
> the effective deterrent that Congress
> intended, however, the statutory damage
> amounts in the FDCPA must remain adequate.
> The FTC thus recommends that the statutory
> damage amounts in the FDCPA be updated to
> reflect inflation since 1977 and that in the
> future these amounts be increased
> periodically.

As the FTC mentions in the above report, the increasing

weakness of the FDCPA should be addressed by Congress. In the

meantime, however, the problem of rogue debt collectors, with

virtually unlimited resources compared to their victims, are

likely to regard wholesale violations of the FDCPA---with its

less-than-$300 penalty in inflated dollars---as little more

than a trifling cost of doing business. This is not what

Congress intended, but it is what inflation and the passage of

time have wrought.

The intent of Congress was that the FDCPA would be a

remedial statute that would be broadly and liberally construed

in order to effect the preventive purposes for which it was passed, and be enforced by "private attorneys general." This is one reason why the award of fees and costs in such actions is mandatory. <u>Graziano v. Harrison</u>, 950 F.2d 107, 113 (3rd Cir. 1991) ("The reason for mandatory fees is that Congress chose a 'private attorney general' approach to assume enforcement of the FDCPA.").

This action, by contrast, was brought on behalf of the plaintiff pursuant to a contingent fee agreement, meaning---as with any contingent fee agreement---that counsel for the plaintiff run the risk of not being paid any fees at all.

**E. PLAINTIFF IS ENTITLED TO AWARD OF FEES FOR TIME EXPENDED IN PREPARING THIS MOTION.**

The affidavits submitted by counsel for the plaintiff detail the time expended in this litigation through the date hereof, including time expended preparing this motion for award of attorney fees. An award of fees is appropriate for the time expended in pursuing a motion for award of attorney fees. <u>Haitian Refugee Center v. Meese</u>, 791 F.2d 1489 (11th Cir. 1986). "We conclude that attorney's fees may be awarded for time spent litigating the fee claim." <u>Johnson v. State of Mississippi</u>, 606 F.2d 635, 638 (5th Cir. 1979). <u>See also</u> <u>Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant</u>, 771 F.2d 521 (D.C. Cir. 1984) (hours reasonably devoted to request for fees are compensable); <u>Sierra Club v. EPA</u>, 769 F.2d 796 (D.C.

Cir. 1985) (outside attorney compensated at reasonable rate for preparation of fee petition); <u>Tyler Business Services, Inc. v. N.L.R.B.</u>, 695 F.2d 73, 77 (4th Cir. 1982) (amount of recovery may include time spent preparing and prosecuting motion for attorney fees); <u>David v. City of Scranton</u>, 633 F.2d 676 (3d Cir. 1980); <u>Gagne v. Maher</u>, 594 F.2d 336, 344 (2d Cir. 1979), aff'd on other grounds, 448 U.S. 122 (1979).

<u>SUMMARY</u>

In summary, the following facts apply:

a. Congress adopted the private attorneys general approach to enforce of consumer rights under the FDCPA;

b. By making the award of fees mandatory, Congress signaled its intent to encourage attorneys to take such actions;

c. It is common knowledge that attorneys for defendants in FDCPA actions run little or no risk of non-payment of their earned hourly fees;

d. It is also common knowledge that many if not most consumers aggrieved under the FDCPA are abused and harassed because they are simply unable to pay their debts, therefore requiring attorneys to take such cases on a contingent fee basis;

e. The defendant in this action mounted a vigorous defense, which is its right; but

f. Since attorneys for defendants run little or no

risk of non-payment of fees, therefore

g. Attorneys representing aggrieved consumers, acting as "private attorneys general" protecting and vindicating consumer rights mandated by Congress should receive more than a simple lodestar amount for bringing and prosecuting such actions, thus justifying a fee multiplier enhancement factor.

h. The plaintiff is entitled to be awarded reasonable fees for time expended in preparing this motion and attachments thereto.

### III. CONCLUSION

Based upon the revised lodestar calculation of $49,618.50, with a enhancement multiplier of 2.5, attorney fees should be awarded to counsel for the plaintiff in the amount of $124,046.25, together with costs in the amount of $2,141.10, for a total award of $126,187.35.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Sept. 30, 2009 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

s/ Timothy Condon
TIMOTHY CONDON, ESQ. FBN 217921
VOLLRATH-CONDON, P.A.
307 South Fielding Avenue, #2
Tampa, Florida 33606-4126
813-251-2626   Fax 813-200-3395
Email: tim@timcondon.net
COUNSEL FOR PLAINTIFF